Haynes, J.
The action was brought to prevent the lessees Clark A. and Otis Browning from operating certain lands in Bloom township, this county, for the purpose of developing petroleum oil, and for an accounting for certain oil that has been taken from the premises by the Brownings.
• The testimony shows that the plaintiffs the Baumgardners had a lease of about 33 acres of land in Bloom township from Hugh Campbell, the owners of the premises. It is what is commonly known as an oil and gas lease, and was for the period of twenty years from the 5th day of April, 1888.
They were to pay the said Campbell, the lessor,the sum of $500.00, or did pay to him $500.00 at the time of making the lease as rental for the property, the receipt of $500.00 being acknowledged in the agreement.
*74 The lessor leased the lands for the purpose and with the exclusive right to the lessees to drill for petroleum and gas.
The lessor was to remain in possession of the premises and use it for agricultural purposes. In consideration of said grant the lessees agreed to give or pay to the lessor the full equal one-fourth part of all the petroleum or rock oil produced or found on said premises, and to deliver the same free of expense into tank or pipe lines to the credit of the lessor; and should gas be found in sufficient quantities to justify marketing the same, the consideration in full to the lessor was to be 1300.00 per annum for the gas from each well so long as it should be sold therefrom. It was further agreed as follqws: “that the party of the second part shall complete a well on the above described premises with-' in six months from the date hereof, unavoidable accidents excepted; and a failure to complete such well will render this lease null and void and to remain without effect between the parties hereto. Two hundred feet from each line is hereby reserved from drilling operations, to be drilled upon only by the second party if the first party should desire to have it operated.
“If the well is a gas well, party of second part is to pipe same to dwelling house of first party free, and to furnish gas from the same for the use of sugar camp on the premises of the party of the first part. It is understood by the parties to this agreement that all conditions between the parties hereto shall extend to their heirs, executors and assigns.”
Under this lease the Baumgardners were put into possession of the premises, and sunk a well of the size and ordinary depth of wells as then sunk, and it turned out to be what is termed a “dry-hole,” no oil being found, but some gas, which was piped to the premises of the lessor, the lessor laying the pipes from the well to his house,and using the gas for quite a period of time, or so long as gas was found in the well.
*75 Upon the discovery that this well was a “dry-hole,” the derricks and all the drilling and operating apparatus was taken away. The well had been cased, and the casing was left in the well, but nothing was done at the time by the Baumgardners in regard to operating the well. This was in the year 1888. On the 20th of March, 1890, Hugh Campbell and his wife conveyed the land to the Bowling Green Natural Gas Company, subject to this lease to the Baumgardners; and on the 11th of April, 1894, the Bowling Green Natural Gas Company, by an instrument of that date, made an agreement or lease with Browning & Co. giving them the right to drill for oil, and Browning & Co, entered upon the premises, sunk a well and found oil, and then drilling to a greaer depth the old well that had been drilled by the Baumgardners, found oil in that, and then proceeded to produce oil on the premises, until this suit was brought to enjoin them from so producing.
The testimony shows that, as soon as the Baumgardners were apprised of the fact that the Brownings were going on the premises, they notified them that they had rights by virtue of their lease, and sent a letter to them, and one of the Brownings called at the office of the Baumgardners, and the lease was exhibited to him, and the Baumgardners claimed then to have the exclusive right to use these premises for the purpose of mining for oil. However the Brownings claimed to have the right under their lease from the Bowling Green Natural Gas Company in the premises, and did proceed to sink and operaie their wells, and the question arises as to the respective rights of the parties.
It will be observed that two years after the first well was sunk,Hugh Campbell conveyed to the Bowling Green Natural Gas Company the land, but subject to the lease of the Baumgardners, thereby recognizing, we think, the right of the Baumgardners under their lease.
*76 The conveyance that was made by the Bowling Green Natural Gas Company to the Brownings does not appear to say anything about the lease, but, of course, the Brownings could not take any greater rights than’ was possessed by the Gas Company
It is claimed by counsel in argument that it was the duty of’these parties, the Baumgardners, to have proceeded to sink other wells and to develop the territory.
The only well that was stipulated in the lease was this one well that was drilled, and that well was a dry hole.
Now we have held heretofore, that where wells have been sunk under a contract of lease, and found to be productive wells, that it was the duty of the lessee to proceed diligently and make a fair use of the premises in producing the oil, to the end that the lessor might have his royalty and the use of his premises; but we have here a case in which no oil is discovered, and it seems hardly just and right to say that in this case these parties are bound to go forward and sink other wells at a considerable expense, not knowing whether they would obtain any oil or not in their search.
We think the better rule is to say that under this lease the parties have a right to abide, at least for some time, to see what the developments were in the vicinity around and about there.
It will be observed that the Baumgardners had paid the lessor $500.00 for this lease for the term of twenty years. They had contracted for a long term. They did not know whether there was any oil there or not, and it is but just and right that they should have a reasonable time to ascertain from time to time by the developments as to whether there was any ground to see whether there was any oil there or not.
It does not appear that either Hugh Campbell or the Natural Gas Company ever made any demand whatever up *77 on the Baumgardners to proceed to sink other wells. So far as the action of Hugh Campbell is concerned, he acquiesced in their remaining quiescent as they did. They did obtain a well, but it was not a producing well. He sold the premises subject to the lease, and recognized the rights of the lessees, and there is nothing to show that the Gras Company at any time had taken any steps whatever to demand that there should be any further action on the part of the Baumgardners before they attempted to lease it to the Brownings.
Parher & Fries, for plaintiff.
F. A. Baldwin & James O. Troup, for defendants.
It is further claimed that the evidence shows there was an abandonment of these lands, but we are unable to see the facts in that light; we do not think there is anything to show that.
"We think these parties were justified in taking time to consider the developments in the county,and see what could be done thereafter.
There is evidence tending to show that the business of oil well drilling in this county was in a nascent state at the time that well was drilled, and the reason that Browning & Company had come to the conclusion there was oil there was, that in the development of oil territory they had learned to sink wells deeper than they had before, and found that the oil was lying lower in the earth and deeper; and it was with that knowledge that they produced this oil.
Now, without in any way infringing upon any rule we have already laid down, but deciding this case as it stands, we are of the opinion that the equities are with the plaintiffs Baumgardners, and that they still have a fair and just right to hold the exclusive possession of these premises fox the time being, and at this time, for the purposes of determining whether there is any oil in the land or not